**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHN P. LEE,

        Plaintiff,

        v.                           Case No.3:09-cv-421-J-12TEM

SECURITY CHECK, LLC, et al.,

        Defendants.

_____

# ORDER

This cause is before the Court on three motions: 1) Defendant Security Check, LLC's Motion for Summary Judgment (Security Check's motion for summary judgment)(Doc. 86), filed April 9, 2010; 2) Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment (Experian's motion for summary judgment)(Doc. 79), filed April 5, 2010; and 3) "Experian's Motion to Strike Portions of Plaintiff's Opposition ..." (Experian's motion to strike)(Doc. 96), filed May 10, 2010, as well as on Plaintiff's responses in opposition to the motions for summary judgment (Docs. 90 and 87 filed April 27 and April 21, 2010 respectively), and related submissions.[1]  Plaintiff did not file a

_____

[1]     Submissions pertaining to Security Check's motion for summary judgment:

    a)    Plaintiff's redacted Exhibits C,D,E,N,S and T (Doc. 94) filed April 29, 2010;
    b)    Plaintiff's sealed Exhibits O and P (Doc. S-1), filed April 30, 2010; and
    c)    Security Check's exhibits in support of its motion for summary judgment (Doc. 98), filed at 1:55 a.m. June 16, 2010, the date of the hearing on the motion.

Due to the untimeliness of the filing of Security Check's exhibits, the Court indicated at

response to Experian's motion to strike.

On June 16, 2010, the Court heard oral argument on the motions.  After a brief review of the claims and facts involved in this case and the standard of review on summary judgment, the Court will address the various issues raised in each of the pending motions and for the reasons set forth herein, will grant Security Check's motion for summary judgment, grant in part and deny in part Experian's motion to strike, and grant in part and deny in part Experian's motion for summary judgment.

Plaintiff's Claims and Factual Background

Plaintiff's Third Amended Complaint (Doc. 66) asserts three causes of action: defamation as to both Defendants (Count 1), violation of the Fair Debt Collection Practices Act (FDCPA) as to Security Check (Count 3), and violation of the Fair Credit Reporting Act (FCRA) as to Experian (Count 2).  Plaintiff's claims all relate to his attempts to correct inaccurate information in his credit report.  In December 2008, when he applied with Branch Banking and Trust Company ("BB&T") and Vystar Credit Union to refinance his

---

the hearing that they would not be considered in support of its motion.

Submissions pertaining to Experian's motion for summary judgment:

a)   Defendant Experian's Evidentiary Submission [List] (Doc. 83), filed April 6, 2010;

b)   Exhibit E to Experian's Motion for Summary Judgment (Doc. 95), filed April 29, 2010;

c)   Experian's Sealed Exhibits G & O (Doc. S-2), filed May 3, 2010;

d)   Plaintiff's revised Exhibit E to his opposition (Doc. 89-1), filed April 27, 2010;

e)   Plaintiff's redacted Exhibits C,D,E,N,S and T (Doc. 94) filed April 29, 2010;

f)   Plaintiff's sealed Exhibits O and P (Doc. S-1), filed April 30, 2010.

home mortgage, Plaintiff discovered that his credit score with the credit reporting agency Experian was significantly lower than his score with two other credit reporting agencies, and that two factors adversely affecting his score concerned a derogatory public record. Docs. 95-1 at 16; 79-17.  He then requested and received from Experian a copy of his credit report which showed him responsible for a $31 returned check reported by Security Check and purchased by Security Check for collection.  Doc. 95-1 at 25-26.  The returned check had been written to Pizza Hut by a John Lee in June 2008.  Doc. 79-17.  On December 29, 2008, Plaintiff submitted an on-line dispute with Experian stating that the account represented by the returned check was not his and requesting an investigation. Docs. 95-1 at 26; 79-2 at ¶ 16.

Experian then sought verification of the disputed account from Security Check, advising Security Check that Plaintiff stated the account was not his and that he had not made a purchase at Pizza Hut in over a decade.  Doc. 79-2 at ¶ 17.  By a February 5, 2009, response, Security Check verified the information it had in its files from the returned check, which showed that the address of the check writer was not the same as the address Plaintiff was providing.  Doc. 79-7.

Experian reported the returned check as attributable to Plaintiff because it matched the name and address on the check to Plaintiff's credit report, which since 2000 erroneously listed the check writer's address as a previous address for Plaintiff.  Doc. 79-2 at ¶¶ 11 and 22.  Experian notified Plaintiff on February 6, 2009, that it had investigated the matter with the source of the information and verified the accuracy of his credit report. Docs. 79-2 at ¶ 18; 79-9.  On February 7, 2009, in response to Plaintiff's online request, Experian added Plaintiff's statement "I have no knowledge of this account" to his credit

report.  Docs. 79-2 at ¶ 19; 95-1 at 106.

That same day, Plaintiff contacted Security Check and discovered that his address did not match the address on the returned check.  Doc. 95-1 at 27.  He wrote Experian informing it of the mistaken identity, indicated that Security Check had verified that the collection was for someone else, and Plaintiff again requested that Experain delete the information from his credit report.  Docs. 79-2 at ¶ 20; 79-10.  On February 19, 2009, Plaintiff received a communication from Experian indicating that it had already investigated the matter, the account had been verified by Security Check, and that it would reinvestigate if Plaintiff provided any new information.  Doc. 79-11.

Unable to correct the error himself, Plaintiff employed First Coast Credit Wizards ("FCCW") on March 4, 2009, to assist him, and learned during a phone call with Security Check that the check had been drawn on a bank where Plaintiff had never maintained an account.  Doc. 95-1 at 114.  Plaintiff and FCCW attempted to include Experian in a three way call with Security Check to clear up the matter, but Experian declined to participate.  Docs. 94-3 at 36 and 38; 86-1 at 57.   They offered to submit to Security Check information to establish that Plaintiff's address was different from the check writer's. Doc. 94-3 at 36.  Security Check did not promise to correct the error but agreed to review the information submitted.  Id. at 38-40.  FCCW then faxed to Security Check a copy of Plaintiff's driver's licence and a copy of his 2008 W-2.  Doc. 94-3 at 37.

On March 13, 2009, Plaintiff forwarded to Experian a letter he received from Security Check which indicated that Plaintiff's address and  the address on the check were not the same.  Doc. 79-12.  In that letter, Plaintiff advised Experrian that the information on his credit report was incomplete and inaccurate and noted on Security Check's letter

4

that he was not the John Lee at the check writer's address and that the account the check had been drawn on was not his.  Id.  He again requested an investigation or to be provided with further information and that the erroneous information be deleted from his credit report.  Id.  Because Plaintiff had not provided any new information, Experian responded by sending Plaintiff a copy of his credit report on March 25, 2009.  Doc. 79-2 at ¶ 21.

Plaintiff then received a copy of a letter written by Security Check  on April 3, 2009, to the Better Business Bureau of Mississippi in response to a complaint by Plaintiff, which stated that it could only verify the information in its files, that is, the name, address, and phone number of the debtor, and that the credit bureau was responsible for matching that information with its records.  Docs. 90-8; 87-9; 79-4 at 51-52.  Plaintiff then initiated this suit in state court on April 14, 2009.  See Doc. 1.

It is undisputed that Plaintiff did not write the returned check and so his credit report contained inaccurate information from at least December 2008 through April 2009.  It is Plaintiff's position that both Defendants had sufficient information from as early as February, 2009, to conclude that he was not the writer of the returned check, and so his credit report should have been corrected before he filed this suit.  However, despite having received copies of his credit report in 2006, 2007, and 2008, Plaintiff never disputed the erroneous address that appeared therein until after this suit was filed.  Docs. 95-1 at 109; 94-3 at 89-91; 79-14; 79-15.  Plaintiff's credit report of April 23, 2009, shows the deletion of both the information about the returned check and the incorrect address that had caused the check to be attributed to him.  Doc. 94-2.

Security Check maintains that it accurately reported the information that it had to Experian, that is, the name of the check writer, his address, phone number and the amount

of the check, as well as the fact that the address Plaintiff had given did not match the address on the returned check.  Docs. 79-4 at 51-53; 86-1 at 27-28, 30,and 57.  It claims that the 2008 W-2 and copy of his driver's license Plaintiff provided was insufficient for it to conclude definitively that Plaintiff had not written the check.[2]  Doc. 90-13 at 64.  Security Check ultimately deleted the item from its system on May 7, 2009, and advised Experian that it had done so.  Doc. 86-1 at 57, 59.

Experian reported the returned check as attributable to Plaintiff because the check writer's address had erroneously appeared in Plaintiff's credit report as a valid address for him since 2000, some eight years before this dispute arose.  Doc. 79-2 at ¶¶ 11 and 22.  Experian contends that it employed its established reasonable procedures to maintain accurate information regarding Plaintiff's credit history and in conducting its reinvestigation of the disputed information.  See Doc. 79-2.  Experian maintains that until after this suit commenced, neither Security Check or Plaintiff had provided sufficient information to correct Plaintiff's credit report.  Id. at ¶¶ 16-21.  Both Defendants seek summary judgment on all claims against them.

.

<u>Summary Judgment Standard</u>

Summary judgment "should be rendered if the pleadings, the discovery and

---

[2]       Security Check claims that it requested that Plaintiff obtain confirmation from the bank upon which the check was drawn that he never had an account there and that he refused to provide such proof.  Docs. 79-4 at 34-35; 86-1 at 60.  Plaintiff denies that he was asked to provide such information. Doc. 94-3 at 37, 114. This factual dispute does not preclude summary judgment as discussed herein as it is undisputed what information he provided to establish that his address was different from that of the check writer, and that Security Check did not consider it sufficient proof that he was not the John Lee who wrote the check.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The purpose of summary judgment is to dispose of unsupported claims or defenses which, as a matter of law, do not raise issues of material fact suitable for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether the movant is entitled to summary judgment, the Court must view all the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, and must resolve all reasonable doubts in favor of the non-movant.  See, e.g., Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1274 (11th Cir. 2008)(citations omitted).

The Court first will address both Defendants' requests for summary judgment on Plaintiff's claim of defamation.  Then the Court will discuss in turn Security Check's motion for summary judgment on Plaintiff's FDCPA claim, Experian's motion to strike, and Experian's motion for summary judgment on Plaintiff's FCRA claim.


Defendants' Requests for Summary Judgment on Plaintiff's Defamation Claim

Both Defendants maintain that Plaintiff's failure to produce evidence of malice or willfulness on the part of either Defendant is fatal to his defamation claims against them. The Court agrees that Plaintiff has not produced evidence sufficient to establish the malice or willfulness necessary under either the FCRA or Florida's common law of defamation.

Plaintiff's Third Amended Complaint alleges that Defendants Security Check and

Experian published false information about Plaintiff, specifically the information contained in his credit report that he wrote the $31 returned check.  Doc. 66 at ¶ 24.  He asserts that Defendants negligently adhered to Title 15 of the Federal Statutes and willfully refused to correct false and libelous information.  Id. at ¶ 22.  Plaintiff alleges that they abused their privilege to publish such information and their negligence became willful when they refused to correct the false information despite documentation establishing that Plaintiff did not write the check.  Id. at ¶¶ 27 and 28.  He describes the error as willful and asserts Defendants falsely and recklessly identified him as the writer of the returned check.  Id. at ¶29.  Plaintiff also describes Defendants' conduct as grossly negligent, demeaning, and willfully indifferent.  Id. at ¶ 30.

Plaintiff asserts that as of February 7, 2009, Security Check knew Plaintiff could not be identified as the writer of the check yet refused to cease collection efforts or correct his credit report.  Id. at ¶¶ 28 and 42.  He claims that Experian knew he could not be identified as the writer of the returned check as of February 19, 2009, yet refused to correct his credit report.  Id. at ¶ 34

All of Plaintiff's allegations regarding defamation relate to the erroneous information contained in his credit report that he had written the $31 returned check.  He maintains that although they knew or had sufficient information to know that he was not the writer of the returned check, Security Check's refusal to convey that fact to Experian, and Experian's failure to correct his credit report, caused the false information to remain published in his report, resulting in damages.

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681h(e) prohibits a consumer from bringing an action against a consumer reporting agency  or any person who furnishes

information to a consumer reporting agency, in the nature of defamation, with respect to the reporting of information, based on information disclosed pursuant to a requirement of the FCRA, except as to false information furnished with malice or willful intent to injure the consumer.  This provision of the FCRA provides a qualified immunity from state law defamation actions except as to false information furnished with malice or willful intent to injure a consumer, and was intended by Congress to be the quid pro quo for the full disclosure of credit information required.  See Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th cir. 1980); Moore v. Equifax Information Services, LLC, 333 F.Supp.2d 1360, 1367 (N.D.Ga. 2004).

The malice or willfulness necessary to overcome the FCRA's qualified immunity has been described to include acting with knowledge that the information was false or reckless disregard of whether it was false or not.  Thornton, 619 F.2d at 705.  Reckless disregard requires evidence of actual doubt about the truth of the information.  Moore, 333 F.Supp.2d at 1367.[3]

Recovery for common law defamation is precluded by the FCRA where the information that gives rise to the cause of action is disclosed pursuant to FCRA provisions, unless the consumer pleads and proves malice or willful intent to injure.  Thornton, 619

---

[3]      At least one court has distinguished the malice or evil motive required to establish a cause of action for common law defamation as different from the willfulness needed to establish entitlement to punitive damages under the FCRA (15 U.S.C. §1681n).  See Thornton, 619 F.2d at 705-706.  However, as discussed in this section on defamation and below with regard to willfulness under the FCRA, many courts have included knowing and reckless behavior for both.  The Court is of the opinion that the definitions of willfulness under both sections overlap, and that in any event, for the reasons discussed herein, Plaintiff has not produced sufficient evidence of malice or willfulness required under the FCRA on the part of either Defendant viewing the facts in the light most favorable to the Plaintiff.

F.2d at 703.  The qualified immunity applies not only to credit reporting agencies like Experian, but to companies that furnish credit information about consumers to credit reporting agencies pursuant to the FCRA, such as Security Check, and likewise protects them from state law defamation claims unless the information provided was both false and given with the malicious or willful intent to damage the consumer.  Lofton-Taylor v. Verizon Wireless, 262 Fed.Appx.999, 1002 (11th Cir. 2008)

In this case, Plaintiff learned of the inaccurate information contained in his credit report when he requested and received a copy of it from Experian, which was required to provide it to him pursuant to 15 U.S.C. § 1681g.  His defamation claims against Experian, as a credit reporting agency, and Security Check, as a furnisher of information to a credit reporting agency, are based on information disclosed pursuant to the FCRA, and therefore are subject to its qualified immunity provision and the requirement that he allege and prove malice or willful intent to injure him in order to overcome that qualified immunity.   See Thornton at 704.

Plaintiff's Third Amended Complaint contains no express allegation that either Experian or Security Check acted with malice or willful intent to injure him. However, Plaintiff has alleged that both Defendants knew he did not write the returned check and refused to correct the false information.   Plaintiff has alleged that Defendants acted with actual knowledge that the information was false or with reckless indifference as to its truth. The Court is of the opinion that such allegations of knowing or reckless indifference are sufficient to assert the malice or willfulness required by the FCRA as interpreted by the courts.

Nevertheless, the record is devoid of evidence to support such allegations.  In his

deposition, Plaintiff admitted that he had no evidence of malice or willful intent to injure him nor does the record before the Court otherwise disclose such evidence with respect to either Defendant. The Court is of the opinion that the actions of the Defendants, viewed in the light most favorable to Plaintiff, cannot support a finding of actual malice, willful intent to injure him, actual knowledge of the falsity of the information or reckless indifference as to the truth of that information. There is simply no evidence in the record that while both Defendants attempted to resolve the dispute with Plaintiff, they in any way knew the information was false or doubted the truth of the information.

The record is clear that Plaintiff believes he had provided sufficient information to establish he was not the writer of the returned check as of February 2009.  However, Security Check did not consider the information he provided to establish that his address did not match the address on the returned check, his 2008 W-2 and a copy of his driver's licence, sufficient to establish that he had not lived at the check writer's address in June 2008 when the check was written, had never lived at that address, or otherwise did not write the check. Docs. 90-13 at 64; 94-3 at 37 and 53.

Plaintiff admits that he never received a letter from Security Check stating the account was not his (Doc. 95-1 at 107) nor did either Defendant tell him the information he had given was sufficient to fix the problem with his report (Doc. 95-1 at 113).  Plaintiff also "doubts" that Security Check's actions were intended to hurt him.  Doc. 94-1 at 54.  He believes "they are doing it intentionally because they were either lazy or incompetent ...[o]r it just wasn't worth their time."  Id.

He admits that he never provided either Defendant with proof that he did not have an account at the bank the returned check was drawn on (Doc. 95-1 at 114).  He concedes

lack of knowledge of the procedures followed, but believes the matter should have been resolved faster and that he should have been given clearer information as to what had caused the problem so he could resolve it.  Doc. 95-1 at 115-117.  He does not believe the Defendants' procedures are adequate to protect consumers, especially ones with common names like his, or to resolve his dispute, and "probably it was just a computer system; wasn't even a real person."  Doc. 94-3 at 69-70.

Similarly, with respect to Experian, it is undisputed that the returned check writer's address had erroneously appeared in Plaintiff's credit report since 2000, it was the basis upon which Experian relied to continue to report the information in Plaintiff's credit report, and that error was not discovered or corrected until after the commencement of this litigation.  Docs. 79-2 at ¶¶11 and 22; 95-1 at 59 and 102.  Plaintiff admits that he did not submit proof to Experian from Security Check that the returned check account was not his nor did he dispute the erroneous address contained in his report until after he filed this suit.  Doc. 95-1 at 104, 107 and 109.

Plaintiff also admits Experian did not mislead him or intentionally mean to injure him.  Doc. 95-1 at 117-118. He believes that he was injured because Experian "didn't care" or "it wasn't a priority" and because he did not receive sufficient information to fix the problem.  Id. at 118.

The Court finds that this undisputed evidence cannot support a factual finding of malice, willful intent to injure, actual knowledge or reckless indifference on the part of either Security Check or Experian.  The undisputed facts cannot support a legal conclusion that either Defendant knew or was recklessly indifferent to the truth.   As a result, both Defendants are entitled to summary judgment in their favor as to Plaintiff's claim for

defamation contained in Count I of Plaintiff's Third Amended Complaint.

Moreover, even if the qualified privilege under the FCRA were inapplicable to either Defendant, such privilege would attach under the common law of Florida and likewise require judgment as to both Defendants on Plaintiff's defamation claim. Under Florida law, a qualified privilege requiring proof of express malice attaches to statements made among parties having a right, duty, or interest with respect to the subject matter of the communication. Nodar v. Galbreath, 462 So.2d 803, 809 (Fla. 1984). All communications in this case occurred between parties having a right, duty, or interest in regard to Plaintiff's credit report, and so the qualified privilege would attach.

The express malice required to defeat the qualified privilege under Florida common law has been defined as ill will, hostility, evil intention to defame and injure. Id. at 811-12. It requires proof of motivation by desire to harm rather than by a purpose to protect the interest giving rise to the privilege. Id. For the reasons stated above, Plaintiff cannot establish express malice on the undisputed facts of this case and so both Defendants are also entitled to summary judgment on Plaintiff's defamation claims under Florida common law.

Security Check's Motion for Summary Judgment on FDCPA Claim

Title 15, United States Code § 1692g(b) states in relevant part that "[i]f the consumer notifies the debt collector in writing ... that the debt ... is disputed ... the debt collector shall cease collection of the debt ... until the debt collector obtains verification of the debt ... and a copy of such verification is mailed to the consumer...." This section also addresses collection activities and communications that may take place once a

13

debt is disputed.

A debt collector is not liable for violation of the FDCPA if it "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  A debt collector is not required to conduct an independent investigation of a debt referred for collection; it's only duty is to verify the information provided to it by the creditor.  Clark v. Capital Credit & Collection Services, 460 F.3d 1162, 1173-74 (9th Cir. 2006); Smith v. Transworld Systems, Inc., 953 F.2d 1025,  (6th Cir. 1992).  The standard for determining whether the FDCPA has been violated is whether the "least sophisticated consumer" would have been deceived or misled by the conduct at issue.  Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).

Plaintiff asserts that  Security Check violated 15 U.S.C. § 1692g(b) of the FDCPA by failing to cease collection efforts and correct erroneous publications once it became aware that Plaintiff did not write the check.  Doc. 66 at ¶ 37.   Plaintiff has not alleged or presented  evidence that Security Check ever attempted to communicate with him or to collect the debt represented by the check from him. Docs. 94-3 at 49-50 and 95-96; 79-4 at 22.  The evidence and arguments he sets forth concern his efforts to have Security Check provide information to Experian that he was not the writer of the check so that his credit report could be corrected.

Security Check attempted to collect the debt represented by the returned check by mailing two letters to the address on the check, and when it was unable to contact the check writer, reported the information contained on the check to Experian.  Docs.

14

79-4 at 22; 94-3 at 49-50 and 95-96.  Experian then matched the returned check to Plaintiff's credit report because his report erroneously contained the check writer's address. Doc. 79-2 at ¶¶ 11 and 22.  Throughout the dispute, Security Check provided Experian with the information it had about the returned check (writer's name, address, phone number), as well as the information that Plaintiff was providing a different address. Docs. 79-4 at 52-53; 86-1 at 27-28, 30, 57.  The Court is of the opinion that the undisputed facts presented do not establish a violation of the FDCPA as a matter law.

Civil liability under the FDCPA attaches when a debt collector continues to communicate or attempts to collect a disputed debt from the consumer until the debt is verified and the consumer notified.  The statute does not purport to impose civil liability for furnishing erroneous information to a credit reporting agency or for failing to correct erroneous information provided to a credit reporting agency.

In fact, the FDCPA does not impose any duty of independent investigation regarding a disputed debt that has been referred for collection.  Hepsen v. J.C. Christensen and Associates, Inc., 2009 WL 3064865 (M.D.Fla. Sept. 22, 2009)(citing Smith v. Transworld Sys., Inc., 953 F. 2d 1025, 1032 (6th Cir. 1992)).  It merely prohibits debt collection activity regarding a disputed debt until the debt is verified from the original creditor.  In this case, the original creditor, Pizza Hut, had the same information from the returned check that Security Check had, so verification of the debt would not have provided any additional information, and Security Check never made any calls or written communications to Plaintiff in an attempt to collect the debt from him.  Doc. 94-3 at 95-96.

Inasmuch as Plaintiff has not offered any evidence of an attempt by Security

Check to collect from him the debt represented by the check, or any legal authority to

support liability under the FDCPA for Security Check's alleged conduct,[4] Security Check

is entitled to summary judgment as a matter of law as to Count 3.


Experian's Motion to Strike

Experian moves to strike portions of Plaintiff's response (Doc. 87) to its motion

for summary judgment (Doc. 79) as immaterial and impertinent: 1) Exhibits A, B, C, F,

G, J, M, O, P and portions of Exhibit E and any references related thereto in Plaintiff's

response; 2) various assertions in Plaintiff's response that Experian acknowledged it

published a false report, that it was the source of the incorrect address in Plaintiff's

credit report, that Experian was negligent or reckless, and that Plaintiff would have

saved thousands of dollars in refinancing his mortgage; and 3) rhetorical questions

contained in Plaintiff's response.  Experian discusses how the various exhibits and

statements in Plaintiff's response relate to the summary judgment issues of whether 1)

Experian published an inaccurate credit report to a third party; 2) it followed reasonable

procedures to ensure the maximum possible accuracy of Plaintiff's credit report; 3) it

conducted a reasonable reinvestigation; 4) Plaintiff has established a willful violation of

the FCRA to support his claim for punitive damages; and 5) Plaintiff has established

causation of any damages.

---

[4]        At oral argument, Plaintiff argued that Security Check's failure to provide
Experian with the correct information that Plaintiff was not responsible for the returned
check was an attempt to collect that debt from Plaintiff.  Plaintiff cited no legal authority
or evidence in the record to support such theory of liability under the FDCPA.

There is some question about whether a motion to strike pursuant to Fed.R.Civ.P. 12(f) is properly directed at a document that is not a pleading, such as a motion for summary judgment.  The Court is of the opinion that Experian's motion to strike is more appropriately characterized as a reply to the arguments Plaintiff makes in his response to the extent that it challenges the various statements contained therein (categories 2 and 3 of the matters Experian seeks to strike described above).  The Court will not attempt to review Plaintiff's response sentence by sentence to determine which sentences or portions thereof should be stricken as irrelevant or immaterial. Such exercise would not serve the interests of justice or assist in the efficient resolution of Experian's motion for summary judgment. The Court therefore will deny the motion to strike as to categories 2 and 3 of the matters Experian seeks to strike, and the Court does not consider Experian's arguments in ruling on the merits of Experian's motion for summary judgment as Experian did not seek permission to file a reply as required by M.D.Fla.R. 3.01(c).

To the extent that Experian challenges various exhibits or portions thereof, the Court is of the opinion that its motion to strike is more appropriately characterized as making objections to the various documents identified (category 1 of the matters Experian seeks to strike described above).  Nevertheless, in this case the Court need not address Experian's objections to the exhibits because by his failure to respond to the motion to strike, Plainitff has lost the opportunity to oppose the motion.  See M.D.Fla.R, 3.01(b).  As a result, Experian's motion to strike is granted as to the exhibits listed therein and the Court does not consider them in resolving Experian's motion for

summary judgment.[5]

Experain's Motion for Summary Judgment on FCRA Claim

Plaintiff alleges that  Experian violated the FCRA's requirements of 15 U.S.C.

§1681e(b) in failing to reasonably ensure the accuracy of Plaintiff's credit report and of

15 U.S.C. § 1681i(a)(5)(A) in failing to delete inaccurate information and notify the

furnisher when it learned the information regarding the check in his credit report was

inaccurate and unverifiable.  Doc. 66 at ¶¶ 32-33.  The FCRA requires consumer credit

reporting agencies to follow reasonable procedures to ensure the maximum possible

accuracy of credit reports (15 U.S.C. § 1681e(b)), that they conduct a reasonable

reinvestigation of any item disputed by a consumer (15 U.S.C. § 1681i(a)(1)(A), and if

the information is found to be inaccurate, incomplete, or unverifiable they must delete or

modify the information as appropriate and notify the furnisher of the information that the

information has been deleted or modified (15 U.S.C. § 1681i(a)(5)(A)).[6]   A credit

reporting agency is not strictly liable for inaccurate information contained in a

---

[5]        It appears that Plaintiff intended various documents he submitted to support his opposition to both motions for summary judgment.  See Doc. 94.  Security Check has not objected to any of the documents submitted by Plaintiff, and to the extent that they are relevant to the dispositon of its motion, the Court will consider them. In addition, to the extent that Experian has offered the same exhibits or portions thereof in support of its motion for summary judgment, the Court likewise considers them.

[6]        The Court notes that Plaintiff's Third Amended Complaint does not cite 15 U.S.C. § 1681i(a)(1) which requires a reasonable reinvestigation of disputed information in a consumer's credit report, or otherwise directly challenge the adequacy of Experian's reinvestigation, but a fair reading of Plaintiff's allegations implicate that provision by alleging that after the reinvestigation, Experian failed to delete inaccurate information and notify Security Check that it had done so.

consumer's credit report and is not liable under the FCRA if the inaccurate report was generated by following reasonable procedures to maintain maximum accuracy and to reinvestigate alleged errors, which will be jury questions in the overwhelming majority of the cases.  See Cahlin v. General Motors Acceptance Corporation, 936 F.2d 1152,1156 (11th Cir. 1991).

Experian asserts four bases for summary judgment on Plaintiff's FCRA claim: 1) that there is no evidence in the record that Experian issued an inaccurate consumer or credit report to a third party; 2) that Experian complied with the FCRA in that it followed reasonable procedures for ensuring the accuracy of Plaintiff's credit report and conducted a reasonable reinvestigation of Plaintiff's complaint of error;  3) that lack of evidence of willfulness is fatal to Plaintiff's punitive damages claim; and 4) that Plaintiff cannot produce evidence of the existence of damages and/or causation of damages by Experian.  The Court will address each of Experian's bases for summary judgment in turn.

1.      Consumer or credit report to a third party

A consumer report or credit report is "*any* written, oral, or other communication of *any* information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity...which is used or expected to be used ... as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes or employment purposes..."  15 U.S.C. § 1681a(d)(1)(A) and (B)(emphasis added).  Experian argues that Plaintiff has produced no evidence that a credit report was issued to a third party but only that he himself requested and received copies of his credit report containing the inaccurate

19

information.  Such report issued to a consumer does not fall within the definition of a consumer or credit report and is elsewhere defined in the FCRA as a credit disclosure. See 15 U.S.C. 1681g.

Experian would have the Court read the definition of consumer report too narrowly, to include only communication of a consumer's entire credit report.  The definition of consumer or credit report under the FCRA is broad, encompassing any oral or written communication by the credit reporting agency bearing on the consumer's credit worthiness, credit standing, or credit capacity.  The Court finds that the record contains evidence of disclosure of Plaintiff's consumer or credit report to at least one third party .

Plaintiff's March 25, 2009, credit report lists both Vystar Credit Union and BB&T as companies that "have reviewed your credit report as a result of action you took" on January 12, 2009, and December 24, 2008, respectively.  Doc. 79-13 at 13.  That credit report also lists a number of "soft inquiries" to whom "we [Experian] offer credit information about you [Plaintiff] to those with a permissible purpose."  Id. at 13-15.  A soft inquiry is a request for a consumer's credit information by a current creditor or a pre-screened offer.  Doc. 79-2 at ¶ 6.  While it is unclear from the record exactly what information was disclosed to these third parties, the record does reveal that it was information from Plaintiff's credit file and was described by Experian as either a "credit report" or "credit information."  As such, it necessarily related either to Plaintiff's credit worthiness, credit standing, or credit capacity and thus constituted a credit report under the FCRA's broad definition.

The record also reveals that in evaluating Plaintiff's mortgage refinancing

20

application, BB&T utilized a Disclosure of Credit Score Information form which showed a

score of 675 from Experian and indicated as two of the four key factors adversely affecting

his score that a derogatory public record or collection had been filed and that the time

since the derogatory public record had been filed was too short.  Doc. 95-1 at 120-122;

Doc. 79-17. Plaintiff's other credit scores were 764 and 804, and did not list those two

factors as adversely affecting his score.  Doc. 79-17.  The Court is of the opinion that the

information communicated to BB&T by Experian meets the definition of a consumer report

in that it bore on his credit worthiness and was intended to be used for establishing

Plaintiff's eligibility for credit, in this case, the refinancing of his mortgage.

Therefore the Court finds that the record contains evidence that Plaintiff's credit

report was issued to at least one third party, so Experian is not entitled to summary

judgment on this basis.

2.    Reasonable procedures

Experian's motion and supporting documents provide a great deal of detail about

the nature of Experian's business and the procedures that it followed in assembling

Plaintiff's credit report and conducting its reinvestigation of his dispute.  See Doc. 79-2 at

¶¶ 3-14.  Experian contends that its procedures were reasonable and that it did

everything required by the FCRA with regard to the disputed error in Plaintiff's credit

report.

Plaintiff, on the other hand, unsurprisingly, experienced those procedures as

unhelpful, inadequate, and frustrating.  Plaintiff first knew the information contained in

his credit report about the returned check was false because he had not eaten at Pizza

Hut in a number of  years, then learned from Security Check he had never lived at the

21

address listed on the check, and after employing FCCW, discovered that he had never banked at the bank upon which the check was drawn.  Despite several contacts with both Defendants, Plaintiff was unable to correct his report until after this suit was filed. Doc. 95-1 at 59.

"The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances."  Swoager, 608 F.Supp. 972, 975  (M.D.Fla. 1985)(citing Thompson v. San Antonio Retail Merchants Ass'n, 682 F.2d 509, 513 (5th Cir. 1982)).  Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances and involves weighing the potential harm from inaccuracy against safeguarding against the inaccuracy.   Philbin v. Trans Union Corporation, 101 F.3d 957, 963 (3d Cir. 1996)(citations omitted).

What are reasonable procedures to assure the maximum possible accuracy of a credit report differ from what constitute reasonable procedures for reinvestigation of disputed information.  At least one Court has observed that the standard of conduct imposed requiring assurance of maximum possible accuracy in credit reports seems to differ from that required in reinvestigating disputed information and deleting information determined to be inaccurate of unverifiable.  Swoager, 608 F.2d at 975.  In some circumstances, a credit reporting agency may have a duty to go beyond the original source of its information to verify the accuracy of information, which will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable.  Henson v. CSC Credit Services, 29 F.3d 280, 287 (7th Cir. 1994).

It is axiomatic that procedures must be reasonable with respect to the particular dispute presented.  A credit reporting agency cannot rely on the fact that is has established some procedures, but must prove by a preponderance of the evidence that such procedures are reasonable to address the specific dispute presented. For this reason, as noted above, questions concerning reasonableness of procedures are almost always more appropriately determined by the trier of fact, in this case a jury.  See Cahlin, 936 at 1156.

The Court notes some matters that give rise to factual questions concerning the reasonableness of Experian's procedures in the circumstances of this case.  The Court finds that questions of material fact exist as to such matters as whether or not it was reasonable: 1) for Experian to continue to rely on the data verified by Security Check (name, phone number and address on the check) in light of Plaintiff's multiple communications that he was not the check writer;[7] 2) to refuse a conference call with Security Check, FCCW, and Plaintiff to attempt to resolve the matter; 3) to report Plaintiff responsible for a returned check drawn on a bank that did not otherwise appear in Plaintiff's credit report; and 4) to use only Plaintiff's relatively common name and an alleged previous address to continue to report the inaccurate information after numerous complaints by Plaintiff.  The Court is of the opinion that on the facts of this case, the determination of the reasonableness of Experian's procedures cannot be resolved as a

---

[7]     See Swoagar, 608 F.Supp at 975-76 (clear knowledge of dispute between consumer and creditor may affect credit reporting agency's ability to rely upon information received from creditor on reinvestigation; merely contacting creditor about disputed entry does not amount to reasonable investigation where credit reporting agency knows of dispute).

matter of law and must by left for determination at trial.  Therefore, Experian is not entitled to summary judgment on this basis.

        3.      Willful violation of the FCRA

      The FCRA creates a private right of action for willful or negligent violation of the duties imposed.  15 U.S.C. §§ 1681n and o.  It also provides for recovery of actual or statutory damages as well as punitive damages if the violation is willful, and actual damages for negligent violation.  Id.  Willful violations include both knowing and reckless violations.  Safeco Insurance Company of America v. Burr, 551 U.S. 47, 59-60 (2007).  "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a high risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Id. at 69.   So in order to establish a willful violation of the FCRA, a consumer must prove either a knowing violation or that the alleged violator acted in accordance with an objectively unreasonable reading of the FCRA and with an unjustifiably high risk of violating the FCRA.  Id. at 70.  To show willful noncompliance with the FCRA to support an award of statutory and punitive damages, Plaintiff must prove that Experian knowingly and intentionally acted in conscious disregard for his rights, that it's action were deliberate and purposeful, but need not show malice or evil motive.  Philbin v. Trans Union Corporation, 101 F.3d 957, 970 (3d Cir. 1996)(citing Pinner v. Schmidt, 805 F.2d 1258,1263 (5th Cir. 1986) cert. denied 483 U.S. 1022 (1987)).

      Knowing or reckless conduct is required, that is, action entailing an unjustifiably high risk of harm.  On the basis of the facts set forth above with regard to Plaintiff's

defamation claim against Experian, the Court finds that while a question remains regarding whether Experian acted negligently, the undisputed facts cannot establish that Experian willfully violated the FCRA as a matter of law.  Plaintiff has not presented proof sufficient to support a finding that Experain's reading of the FCRA was objectively unreasonable or that it acted with an unjustifiably high risk of violating the FCRA.  As a result, Experian is entitled to summary judgment on Plaintiff's claims for statutory and punitive damages pursuant to 15 U.S.C. § 1981n.

        4.    Plaintiff's damages

Experian also argues that it is entitled to summary judgment in its favor because Plaintiff has not and cannot establish actual damages caused by Experian.  Plaintiff has an affirmative duty to come forward with evidence that the inaccurate information contained in his credit report caused him harm.  Cahlin, 936 F.2d at 1161.  "Failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment.[8]" Nagle v. Experian Info. Solutions, Inc., 297 F. 3d 1305, 1307 (11th Cir. 2002).

Plaintiff's Third Amended Complaint (Doc. 66) alleges that as a result of "Defendants' negligent adherence to Title 15 of the Federal Statutes, and willful refusal, as required by those statutes, to correct false and libelous information made public about the Plaintiff, John and his family have suffered defamatory damages (¶ 22)," the information published was defamatory, damaging his reputation and was a threat to his

---

[8]    In fact, absent an award of actual damages for negligent violation of the FCRA, the consumer is not a prevailing party and is not entitled to an award of attorney's fees under the statute even if a violation of the statute is found.  See Nagle, 297 F.2d 1305, 1306-07.

job requiring a security clearance (¶26),caused him to be denied the ability to refinance his home mortgage (¶29), and resulted in unspecified and unknown damages from lost financial opportunities (¶30).

Plaintiff has sought recovery for Experian's alleged willful and negligent violation of the FCRA.  Doc. 66 at ¶¶34 and 35.  The Court has determined that Plaintiff cannot establish a willful violation as a matter of law on the undisputed facts of record.  As a result, Plaintiff is entitled to recover only actual damages, if any, costs, and attorney's fees should he convince a jury that Experian's actions were negligent.  See 15 U.S.C. § 1681o.

Plaintiff has not presented sufficient proof of any damages resulting from denial of credit, lost credit opportunities, or adverse employment consequences. Plaintiff simply has offered no evidence that he was ever denied credit or had any other adverse credit result because of the inaccurate information contained in his report.  See Doc. 95-1 at 67-68, 78-79, 87, and 118.  In fact, despite his lower credit score with Experian, BB&T offered Plaintiff a refinance rate of 4.75% and indicated that such rate was not based on his Experian credit score.  Doc. 95-1 at 18, 20, 123, and 157.  Plaintiff voluntarily withdrew his mortgage refinance application with Vystar.  Id. at 21.  Plaintiff has offered no proof that he could have received a lower rate somewhere else but for the erroneous information in his credit report.  Any damages related to lost credit offers, such as pre-approved credit cards, or lost opportunities to refinance his mortgage are purely speculative and not recoverable.  See Casella v. Equifax Credit Information Services, 56 F.3d 469, 475 (2d Cir. 1995).

Plaintiff likewise suffered no adverse employment consequences as a result of

26

the erroneous information in his credit report.  Plaintiff's current job does not require a

security clearance.  Doc. 95-1 at 13.  He stated that although he was turned down for

promotion for a position which would have required a security clearance and background

check including a credit check, he had no basis to establish that his employer looked at

his credit report or that any information contained therein was a factor whatsoever in that

decision.  Id. at 13-14.

As a result, Experian is entitled to summary judgment in its favor regarding

Plaintiff's claims of damages resulting from denial of credit, lost credit opportunities and

adverse employment consequences.  Plaintiff has indicated he is not seeking damages

for emotional distress.  Doc. 94-1 at 74-75.

Nevertheless, the record does show that Plaintiff incurred some actual damages

in the process of correcting his credit report.  Plaintiff hired FCCW to attempt to resolve

the matter with Experian, as well as an attorney to litigate this matter, and lost time from

work in the course of the dispute.  Doc. 95-1 at 58-59.  As a result, Experian's motion for

summary judgment is due to be denied with respect as to these aspects of Plaintiff's

claim for actual damages or any others he may have that have not been precluded as

set forth above.

Accordingly, Experian's motion for summary judgment as to Plaintiff's FCRA

claim will be granted in part and denied in part.  It is denied with respect to Plaintiff's

claims for negligent violation of the FCRA (15 U.S.C. § 1681o) and actual damages

recoverable therefore as set forth herein, and granted with regard to his claim of willful

violation (15 U.S.C. § 1681n) and various aspects of damages discussed above.

Therefore, upon review of the matter, it is

**ORDERED AND ADJUDGED**:

1.      That Defendant Security Check, LLC's Motion for Summary Judgment (Doc. 86) is granted as to Counts 1 and 3 of Plaintiff's Third Amended Complaint;

2.      That Defendant Experian's Motion to Strike Portions of Plaintiff's Opposition ..." (Doc. 96) is granted in part and denied in part as set forth herein; and

3.      That Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment (Doc. 79) is granted as to Count 1 of Plaintiff's Third Amended Complaint and granted in part and denied in part as to Count 2 as set forth herein.

**DONE AND ORDERED** this __5th__ day of August 2010.


*Howell W. Melton*
HOWELL W. MELTON
United States District Judge


Copies to:     Counsel of Record

28